### R. L. LASSITER v. THE STATE.

No. 2818.    Decided February 4, 1914.

**1.—Aggravated Assault—Charge of Court—Execution—Trespasser.**

Where, upon trial of aggravated assault, the evidence showed that the injured party, who was acting as constable under a writ of execution which was void and did not give him the right to enter upon defendant's premises, and besides, threatened to injure the defendant and to forcibly take his property, the defendant was justified in using all necessary means to prevent the intrusion of said party upon his property as well as in defense of himself, and where the court's charge did not apply the law to the facts and the defendant's charge set forth the correct rule which the court refused to submit, the same was reversible error.

**2.—Same—Invalidity of Execution—Trespasser—Charge of Court.**

Where the injured party under the evidence occupied the position of a trespasses on defendant's premises and the writ of execution under which he acted did not justify him in anything that he did at defendant's home, the court should have instructed the jury not only that said writ was void, but that the injured party was a trespasser.

**3.—Same—Charge of Court—Question of Good Faith.**

It was immaterial so far as defendant's rights are concerned what the constable thought as to the validity of said writ of execution, because the facts showed that the writ was void, and the court should have so instructed the jury.

**4.—Same—Defense of Property—Charge of Court.**

Where the alleged injured party was acting under a void writ of execution in entering defendant's premises to seize and levy upon defendant's property, the latter had the right to arm himself to resist such illegal entry and to defend his home to the extent of using such arms, and the court should have so instructed the jury as requested.

Appeal from the District Court of Bowie. Tried below before the Hon. H. F. O'Neal.

Appeal from a conviction of aggravated assault; penalty, a fine of $100.

The opinion states the case.

*Mahaffey, Thomas & Hughes,* for appellant.—On the right to kill in defense of property when the trespasser is armed: Ross v. State, 10

Texas Crim. App., 455; Alford v. State, 8 id., 545; Sims v. State, 36 Texas Crim. Rep., 154; Circle v. State, 22 S. W. Rep., 603; Pryse v. State, 54 Texas Crim. Rep., 523, 113 S. W. Rep., 938; Bryant v. State, 100 S. W. Rep., 371.

On question of void execution: Capps and Cantey v. Leachman, 90 Texas, 499; Collins v. Hines, 100 Texas, 304.

The fact that the party was an officer gave him no more rights than a private citizen: Lynch v. State, 41 Texas Crim. Rep., 510; Miers v. State, 34 id., 161.

On question of refusal of requested charges: Knight v. State, 66 Texas Crim. Rep., 335, 147 S. W. Rep., 268; Yantiz v. State, 49 Texas Crim. Rep., 400, 94 S. W. Rep., 1019.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, Judge.—Appellant was convicted of aggravated assault. Briefly stated, the record discloses that prior to the difficulty there was a civil suit brought in the Justice Court of Bowie County, appellant as attorney representing the defendant. This suit was pending in justice precinct No. 7. Powell was plaintiff and Charlie Stone defendant. The evidence indicates that the title to some corn and peanut hay was involved in the litigation, which had been seized by some ancillary writ. It seems that about the 18th of March, 1913, S. S. Ott, acting by and through Charlie Stone, his agent, made out or attempted to do so, a claim bond with affidavit for the purpose of trying the rights to the above mentioned property. The claim bond was signed by Charlie Stone as agent for S. S. Ott, and Charlie Stone in person, and several others, appellant being one of the named signers to the bond. This bond seems never to have been delivered to or approved by the officer who seized the property. Nor was there, so far as the record shows, any trial of the rights of this property. The main suit, however, between Powell and Charlie Stone was tried, appellant appearing for Charlie Stone as his attorney. The following judgment, omitting formal recitals, was entered in the suit: "Wherefore, it is ordered, adjudged and decreed that claimants take nothing by their claimants bond, and that plaintiff do have and recover of and from defendant and claimants sureties on their claimant bond seventy-two bushels of corn, one thousand pounds of peanuts and peanut hay, together with all cost in this behalf expended, and that plaintiff's sequestration on said corn and hay, be and the same is hereby foreclosed, for all of which let execution issue." This judgment was rendered on April 12th. On the following 10th of May an execution was issued as follows: "To the sheriff or any constable of Bowie County—Greeting:

"Whereas, on the 12th day of April, A. D. 1913, J. W. Powell recovered a judgment in the Justice's Court, precinct number 7 of Bowie County, Texas, against Charlie Stone, R. L. Lassiter, S. S. Ott, G. W. Barrett, for the sum of 72 bu. corn, 1000 lbs. peanut hay, with interest

thereon from 12th day of April, 1913, at 6 per cent per annum, and all costs of suit.

"Therefore, you are hereby commanded that of the goods, chattels, lands and tenements of the said Charlie Stone you cause to be made said sum of (*Blank*) Dollars, and interest as aforesaid, together with the sum of twenty-four and 20/100 dollars costs adjudged against the said Charlie Stone, and also the further costs of executing this writ." The recitations in this execution show that this judgment was rendered on the 12th of April and carried interest at 6 per cent per annum. It is unnecessary to notice that this execution directed that 6 per cent interest on the corn and peanut hay, as also the cost, be collected from Charlie Stone. It did not direct the collection of the seventy-two bushels of corn and 1000 pounds of peanut hay at six per cent interest. Simington was the constable. He summoned a man named Darnell to go with him to execute the process on appellant's mule. Appellant lived something like one-half mile from the village of Bassett, and Simington informed appellant that he was going to collect that cost and if he didn't pay it he was going to levy on one of his mules. He further notified appellant that he didn't propose to have any trouble about it and he must not give him any trouble; that if he did he would hurt him. Darnell testified that Simington said to appellant: "Lassiter, now I don't want any trouble with you, but I have this execution here to collect that cost. If you want to pay it, it is all right, and if you don't, I am going to levy on that mule. If you come out there with your gun I am going to hurt you." Appellant replied, "All right, sir." Defendant testifying in this connection, speaking of the conversation that occurred before the parties went to appellant's house, gives this version of it: Simington, speaking to appellant, says: "I have an execution this morning for that cost in that Powell case." Appellant replied, "Well, I can't help that." Simington said, "You have the money to pay that cost." Appellant replied, "Yes, and I am going to keep. 'Well,' he said, 'I am going to levy on something if you don't pay it.' I said, 'Mr. Simington, you know that I am not in your court, you were present when both of the bonds were overruled and notified me the appeal bond was turned down, and the claimants bond was knocked out of court, which put me and my clients out of court, the bond, and the responsibility of it.' I said: 'If you have an execution against me it is void and of no effect.' I reasoned the matter with him and he got mad, and he said: 'God damn you, sir, you are either going to pay that money, or I am going to levy on you.' I said: 'I have plenty of land to levy on, and Mr. Ott has five thousand acres that you can levy on, levy on the land.' He said: 'God damn your land, I am going to take one of your mules out of the plow.' I said: 'I don't think you will do it.' He said finally: 'You must be from Missouri?' I said: 'I am.' He said: 'God damn if I don't show you.' I said: 'All right,' and we separated then and I started home; it was about noon time." The parties, appellant, Simington and Darnell, all reached ap-

pellant's house about the same time. Appellant further testified that Simington said: "If you come out with your gun why I will have to hurt you?" Appellant further testified, as did Darnell, that Simington informed appellant if he interfered with his levy on the mule that he would hurt him, or kill him. After reaching appellant's premises, Darnell stopped at the front gate, or entered. The testimony is in conflict on this matter. Simington went to the lot where the mules were and appellant went in his house. Appellant ordered Simington to get out. As appellant stepped out of his house with his gun, he says, Simington placed his right hand upon his pistol and he fired, as he says,—not to kill, but to disable his arm so that Simington couldn't shoot. One of the shots struck Simington in the arm and the other his right shoulder which disabled him. This was the only shot fired. Darnell denied having a pistol. Appellant thought he was armed. When appellant fired he told Simington to get out, which order Simington then proceeded to obey. The record is voluminous on the facts going into many details, but this is, in substance, the case.

The docket of the Justice Court shows there was no judgment entered against appellant and the writ of execution shows that it was not directed against appellant or his property, but only against the property of Stone. This would, therefore, so far as appellant is concerned, render a trespasser on appellant's property. He had no authority to collect anything from appellant and could not take any of his property. He, therefore, had no right upon appellant's premises. If appellant believed from the movements of the parties at the time that his life was in danger, or his person in danger of serious bodily injury, or that the injured party was going to take his property, he was justified in using all necessary means to prevent the intrusion upon the property as well as defense of himself. The court charged the jury on self-defense as follows:

"The execution introduced in this case as evidence does not confer on W. A. Simington, the alleged injured party, the right or power to levy on property of the defendant, and any levy or attempted levy of said execution by Simington on defendant's property was unlawful. If you believe from the evidence beyond a reasonable doubt that the defendant assaulted W. A. Simington, when if from defendant's standpoint it reasonably appeared to the defendant, or if you believe that by the acts or the words coupled with the acts of said Simington, that it was said Simington's purpose and intent to make an unlawful attack on defendant's property, such as produced in the mind of the defendant, R. L. Lassiter, a reasonable expectation or fear of death or some serious bodily injury, and you so believe such assault took place while said Simington was in the act of making such attack, or after some act done by said Simington, showing to the defendant, from his standpoint, or showing to you an intent on the part of said Simington to make such attack, the defendant would be justified in such assault, and you will find the defendant 'not guilty.'

"If you believe from the evidence, beyond a reasonable doubt, that de-

fendant assaulted said Simington, but that at the time said Simington was not making, or about to make, such attack on defendant's property, as produced such fear or expectation, yet, if you believe said Simington was making, or was about to make, any other unlawful and violent attack upon the property of the defendant besides such as produced such reasonable expectation, or fear, or if it reasonably appeared to defendant from his standpoint that by the acts, or words coupled with the acts of said Simington, that said Simington was making or was about to make such other unlawful and violent attack, and that the defendant assaulted said Simington while said Simington was in the very act of making such other unlawful and violent attack, then such assault would be justified in law, and you will find the defendant 'not guilty.' Yet, to find the assault so justified in repelling this character of attack, if any, on his property, such as did not produce a reasonable expectation or fear of death, or some serious bodily injury, the defendant, R. L. Lassiter, must have resorted to all other means for the prevention of the injury except retreat, and every other effort in said Lassiter's power must have been made by said defendant, Lassiter, to repel the aggression before he would be justified in such assault." Exception was reserved to the above charges, and the following special instruction requested:

"The purported execution which has been read in evidence to you and being the writ which W. A. Simington had and under which he attempted to seize and levy upon defendant's property of any kind, and is and was void, and when said Simington attempted to take the levy upon defendant's mule under and by virtue of said writ he was a trespasser upon the property and the rights of defendant, and the defendant had the right under the law to use all reasonable means to prevent said Simington from taking said mule, and if from the acts, conduct and words of said Simington at the time it reasonably appeared to the defendant, as viewed from his standpoint, that if he interfered to prevent said taking that he would suffer death or serious bodily harm at the hands of said Simington, then the defendant had the right to shoot said Simington in order to prevent said taking." He further asked this instruction: "If W. A. Simington was armed, and was attempting to take the property of the defendant, and it reasonably appeared to the defendant, as viewed from his standpoint at the time, that if he interfered to prevent said Simington taking said property he would suffer death or serious bodily harm at the hands of Simington, then the defendant had the right to shoot said Simington to prevent him taking said property, and would not be necessary that the defendant was in actual danger at the hands of Simington." The court's charge was wrong. It does not state the law and it, to say the least of it, is confusing. The court's charge seems to make the criterion of appellant's danger that the attack on the property, or the attempt to take the property, was such that it produced reasonable expectation or fear of death on the part of the defendant before he could defend. Appellant's proposition was that Simington had reached for his pistol to shoot him, and

threatened appellant's life by the demonstrations to get the pistol and the reaching for it was intended against the person of the defendant and not the mule. Appellant sought to correct this error and requested an instruction fairly presenting the issue which should have been given. Without going into any discussion of this matter, the court's charge was error and appellant's charge set forth the correct rule.

The court should further have instructed the jury as to the invalidity of the execution as against appellant. He was not named in the writ and therefore it could have no effect as to him and the assaulted party had no right to undertake to collect anything from appellant under the writ or to take any of his property. The court should have instructed the jury that this writ was void as to appellant and that all the acts of Simington in going to appellant's house to seize his property were illegal and unjustifiable and that he was a trespasser on appellant's property and at this home. The court in an indirect way did instruct the jury that the execution was unlawful, but he should have gone further and applied the law to the case and also told the jury that Simington was a trespasser at appellant's home and had no legal right to be there. Simington, under the facts of this case, occupied the position of a trespasser on appellant's premises, and the writ of execution did not justify him in anything he did at appellant's home.

Appellant further requested, in this connection, this charge which was refused: "The purported execution which Simington had is and was void. The fact, if it is a fact, that Simington thought the writ valid is immaterial, and would give no greater rights to said Simington under the circumstances." This should have been given. It was immaterial, so far as appellant's rights are concerned, what Simington thought. The case was to be tried from appellant's standpoint, not Simington's. If Simington had had a valid writ of execution against appellant's property, quite a different case or question might be presented. But every fact in the case shows that Simington had no right to levy on appellant's property. The writ did not authorize it.

We are of opinion that the following requested instruction should have been given: "When W. A. Simington attempted to seize and levy upon defendant's mule, the defendant had the right to arm himself with a shotgun and go to where Simington was and to forbid the said Simington taking said mule, and the fact that defendant so armed himself with said shotgun should not be taken as a circumstance against him in this case." The law seems to be well settled that appellant would have the right under the circumstances of this case to arm himself and forbid Simington from interfering with his home and his property. This all occurred at the residence of appellant where his wife and children were. They testified in the case to having witnessed the matter. Appellant had the right to defend his home and he had the right to arm himself and go where Simington was and forbid his entry upon his premises or to seize his property, and if he could not get rid of him otherwise and it became necessary to do so, he had the right to shoot,

even the right to kill. This was a case of apparent danger. It was also a case of the defense of a man's home and his property and the rights involved against a trespasser who had come and threatened to take the property of appellant without any process of law for that purpose and with the further express purpose that if he interfered with him he would hurt or kill him. Simington was armed and under the defendant's theory of the case reached for his pistol; that he had a pistol is testified to by all the witnesses who testified on that subject. Simington himself testified that he had it. Appellant said he shot,—not for the purpose of killing, but to disable Simington's right arm to prevent Simington from shooting him. He fired one shot, disabled the arm, and that ended the difficulty, except Simington was ordered off the place and obeyed the order.

For the errors indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*